UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WILLIE HAYES,

     Plaintiff,

v.

STATE FARM FIRE AND
CASAULTY COMPANY, d.b.a.
STATE FARM MUTUAL
AUTOMOBILE COMPANY,

     Defendant.

Case No. 25-cv-10678

Honorable Robert J. White

## ORDER GRANTING MOTION TO DISMISS

This case involves Plaintiff's state-law claims against Defendant for breach of contract, negligence, and bad faith, which all involve Defendant's handling and denial of a specific insurance claim. (ECF No. 1, PageID.8-9).  Defendant removed the case to federal court on the basis of diversity jurisdiction. (ECF No. 1, PageID.1-2).  Before the Court is Defendant's motion to dismiss Plaintiff's claims for negligence and bad faith under Fed. R. Civ. P. 12(b)(6) (failure to state a claim).  The

Parties fully briefed the motion[1] and the Court will decide it without oral argument pursuant to Local Rule 7.1(f)(2).

For the following reasons, the Court grants Defendant's motion on the merits but declines to strike Plaintiff's untimely and nonconforming response. *See supra* footnote 1. The Court relatedly grants Plaintiff's recently-filed procedural motion seeking consideration of his technically-deficient response. (*See* ECF No. 8).

## I.   Background

Plaintiff alleges that on or about March 26, 2021, a driver insured by Defendant negligently drove her vehicle into Plaintiff's business property, causing over $500,000 in damages. (ECF No. 1, PageID.8). According to Plaintiff, he filed timely notice of a claim for losses from this incident, but Defendant "has failed to appropriately compensate Plaintiff for the damage caused by its insured." (ECF No.

---

[1] Plaintiff filed his response almost three months after the deadline to do so, and he also failed to append a brief certification form as required by the Court's practice guidelines. (*See* ECF No 6). In its reply filed six days later, Defendant requested in part that the Court strike Plaintiff's untimely and nonconforming brief. (*See* ECF No 7). After another eight months, on March 17, 2026, Plaintiff moved for the Court to accept his late response and allow the filing of a brief certification form, which he attached to the motion. (ECF No. 8). Although the Court is somewhat reluctant to excuse Plaintiff's failures, particularly where he never sought any extension of the response deadline and only acknowledged the late and deficient filing over eight months after Defendant's request to strike, "the Federal Rules encourage courts to decide each claim on its merits rather than on procedural technicalities." *Decorative Panels Int'l, Inc. v. Int'l Ass'n of Machinists & Aerospace Workers Local Lodge W-260*, 996 F. Supp. 2d 559, 568 (E.D. Mich. 2014) (citing *Foman v. Davis*, 371 U.S. 178, 181, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962). Absent prejudice to Defendant, the Court declines to strike Plaintiff's reply for mere technical deficiencies.

1, PageID.8).  A denial letter from February 8, 2023, states that Defendant rejected Plaintiff's claim because it "did not receive [the] demand for property protection insurance benefits until January 16, 2023, which is outside the one year statute of limitations." (ECF No. 4-2, PageID.70).

Plaintiff first asserts one count for breach of contract, alleging that Defendant (1) "was obligated to compensate Plaintiff for the damages resulting from actions of its insured" and (2) "breached its contractual obligations by failing to adequately compensate Plaintiff for the losses incurred due to the incident." (ECF No. 1, PageID.8-9).  Plaintiff also asserts one count for negligence, alleging that Defendant (1) "had a duty to act in a reasonable and timely manner in processing Plaintiff's claim" and (2) was negligent by failing "to adequately investigate, assess, and compensate for [Plaintiff's] losses." (ECF No. 1, PageID.9).  Lastly, Plaintiff asserts one count for bad faith due to Defendant's "handling of Plaintiff's claim, including its failure to adequately investigate, respond to, and settle the claim." (ECF No. 1, PageID.9).

Defendant moves to dismiss Plaintiff's claims for negligence and bad faith. (ECF No. 4, PageID.47-48).  According to Defendant, Plaintiff's claim for bad faith lacks merit because Michigan law does not recognize separate bad-faith tort claims involving the "investigating/handling and/or denying of a property insurance claim." (ECF No. 4, PageID.57-60).  Defendant next argues that Plaintiff's negligence claim

must be dismissed because the alleged negligence does not involve any duty separate and distinct from Defendant's contractual obligations. (ECF No. 4, PageID.60-63).

## II.    Legal Standard

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Elec. Merch. Sys. LLC v. Gaal*, 58 F.4th 877, 882 (6th Cir. 2023) ("In analyzing a 12(b)(6) motion, the court must construe the complaint in the light most favorable to the plaintiff and accept all allegations as true.") (cleaned up).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).   The plausibility standard "does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." *Twombly*, 550 U.S. at 556.  "But a pleading must go beyond 'labels and conclusions' or a mere 'formulaic recitation of the elements of a cause of action.'" *Thompson v. Bank of Am., N.A.*, 773 F.3d 741, 750 (6th Cir. 2014) (quoting *Twombly*, 550 U.S. at 555).  Put another way, the complaint's allegations "must do more than create speculation or suspicion of a legally cognizable cause of

4

action; they must show entitlement to relief." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (emphasis in original) (citing *Twombly*, 550 U.S. at 555-56).

Generally, courts may not consider matters outside of the pleadings in ruling on a motion to dismiss. *In re Omnicare, Inc. Sec. Litig.*, 769 F.3d 455, 466 (6th Cir. 2014). A court may, however, consider any documents attached to the complaint, public records, or exhibits that are referred to in the complaint "and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Ath. Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). Defendant attached the aforementioned denial letter to its motion, and the Court will consider this exhibit because it is referred to, at least inferentially, in Plaintiff's complaint and is central to his claims.

## III.   Analysis

### A.   Bad Faith

"A plaintiff cannot maintain an action in tort for nonperformance of a contract. There must be a separate and distinct duty imposed by law." *Casey v. Auto Owners Ins. Co.*, 273 Mich. App. 388, 401 (2006). Accordingly, "[a]n alleged bad-faith breach of an insurance contract does not state an independent tort claim." *Id.* at 401-02; *see also Jennings v. Nationwide Mut. Fire Ins. Co.*, No. 11-14439, 2011 U.S. Dist. LEXIS 131095, at *5 (E.D. Mich. Nov. 14, 2011) ("Michigan courts—and federal courts applying Michigan law—have long held that breach of an insurance

contract, even if done in bad faith, does not give rise to a separate and independent tort claim.").

In *Jennings*, like in the present case, the defendant denied the plaintiff's insurance claim, and the district court concluded that the plaintiff "fail[ed] to allege any breach other than [the d]efendant's bad faith performance of its obligations under the insurance contract." *Jennings*, 2011 U.S. Dist. LEXIS 131095 at *3-4, 5; *see also Cromer v. Safeco Ins. Co. of Am.*, No. 09-13716, 2010 U.S. Dist. LEXIS 36630 at *10-11 (E.D. Mich. Apr. 14, 2020) ("Under Michigan law, a separate tort action cannot be maintained for the failure to pay under an insurance contract—even if the non-payment is done in bad-faith.").

Further, the Michigan Court of Appeals in a similar case concluded that the plaintiff "[a]t most" "attempt[ed] to plead the nonexistent tort of bad faith handling of an insurance claim." *Runions v. Auto Owners Ins. Co.*, 197 Mich. App. 105, 110 (1992); *see also Roberts v. Auto-Owners Ins. Co.*, 422 Mich. 594, 608 ("At most, the dilatory handling of plaintiffs' claim constitutes 'bad faith' . . . for which this Court has held no separate cause of action can lie."). In *Roberts*, like in this case, the plaintiff's tort claim involved, in addition to the denial of benefits, the defendant's conduct in processing the insurance claim at issue—specifically, the defendant's failure to facilitate the claim's filing and delay in responding to the claim. *Roberts*, 422 Mich. at 598-99.

6

As stated, Plaintiff alleges that Defendant exhibited bad faith in its "handling of Plaintiff's claim, including its failure to adequately investigate, respond to, and settle the claim." (ECF No. 1, PageID.9).  Critically, these allegations clearly involve the mere denial and allegedly-improper handling of an insurance claim that cannot support an independent bad-faith tort claim under Michigan law.

Although Plaintiff argues that Defendant's "claims-processing misconduct[] distinct from mere nonpayment . . . may constitute bad faith claims handling actionable through breach of the covenant of good faith and fair dealing embedded within insurance relationships," (ECF No. 6, PageID.90), this is contrary to the above caselaw rejecting such claims. *See Runions*, 197 Mich. App. at 110; *Roberts*, 422 Mich. at 598-99, 608.  And Plaintiff's two cited cases fail to support any independent bad faith claim involving alleged "claims-processing misconduct."

First, in *Cromer*, the Court dismissed a claim for bad-faith handling of an insurance claim because "Cromer has neither alleged, nor made any showing whatsoever that Safeco engaged in any conduct other than denying her claim." *Cromer*, 2010 U.S. Dist. LEXIS 36630 at *7-11.  Similarly, in *Society of St. Vincent De Paul v. Mt. Hawley Ins. Co.*, 49 F. Supp. 2d 1011 (E.D. Mich. 1999), the Court dismissed the plaintiff's bad faith claims arising from the defendant's failure to pay under the terms of an insurance policy. *Id.* at 1019-20.  The Court stated:

> Plaintiff's bad faith allegations cannot be separated from Defendant's contractual duties.  Plaintiff has not alleged that a relationship exists

7

between it and Defendant independent of and apart from their contractual relationship. Accordingly, to the extent Plaintiff's Complaint alleges a tort claim for bad faith breach of the insurance contract, it is DISMISSED.

*Id.*

While Plaintiff here emphasizes that Defendant committed misconduct "distinct from mere nonpayment," neither *Cromer* nor *St. Vincent* involved or addressed such circumstances. Absent any authority allowing an independent bad faith tort claim related to the improper handling/processing of an insurance claim, the Court defers to the aforementioned cases rejecting this premise. Additionally, like in *St. Vincent*, the relationship between Plaintiff and Defendant arises from the purported insurance contract and the alleged obligation thereunder for Defendant to pay (and process) Plaintiff's insurance claim. *See infra* Section III.B.

For these reasons, Plaintiff's bad faith claim is dismissed.

## B.    Negligence

Again, "[a] plaintiff cannot maintain an action in tort for nonperformance of a contract." *Casey v. Auto Owners Ins. Co.*, 273 Mich. App. 388, 401 (2006). To sustain an independent tort claim like negligence, "[t]here must be a separate and distinct duty imposed by law." *Id.* Consistent with these principles, the Michigan Court of Appeals has stated:

Actionable negligence presupposes the existence of a legal relationship between the parties by which the injured party is owed a duty of care by the other. The legal relationship underlying such a duty may arise by contract. That is, the contract creates the state of things that

8

furnishes the occasion of the tort.  However, there must be some active negligence or misfeasance that is distinct from the breach of duty owed under the contract.  If a relationship exists that would give rise to a legal duty without enforcing the contractual promise itself, a tort action will lie; otherwise, it will not.

*Antoon v. Community Emergency Medical Service, Inc.*, 190 Mich. App. 592, 594-95 (1991).

As stated, Plaintiff's negligence claim alleges that Defendant (1) "had a duty to act in a reasonable and timely manner in processing Plaintiff's claim" and (2) was negligent by failing "to adequately investigate, assess, and compensate for [Plaintiff's] losses." (ECF No. 1, PageID.9).  And Plaintiff argues that Defendant owed "a separate duty [independent of the insurance policy] to exercise reasonable care in the processing and handling of" his insurance claim pursuant to "Michigan's common law governing insurer conduct." (ECF No. 6, PageID.89).

Most importantly, the complaint is silent with respect to any separate and distinct duty *imposed by law*.  The complaint alleges that Defendant had a duty to reasonably and timely process Plaintiff's insurance claim, but it does not identify the source of this duty.  Defendant, for its part, maintains that any such duty arose from the insurance policy at issue, barring any independent tort claims.  And Plaintiff critically fails to cite any authority for his position that Michigan caselaw imposes this as a separate, noncontractual duty on insurers, or even a single case permitting

an independent negligence claim against an insurer for allegedly improper claim handling/processing.

Relatedly, Plaintiff's reliance on *Harts v. Farmers Ins. Exch.*, 461 Mich. 1, (1999), is misplaced. *Harts* specifically addressed the claim that an insurance *agent* was negligent in *selling* an insurance policy. *Id.* at 3-4. As relevant here, the Court determined that an insurance agent, except under limited circumstances, does not generally owe a common-law duty to advise an insured regarding the adequacy of coverage. *Id.* at 6-11. *Harts* importantly did not involve any claim that an insurance provider negligently handled or processed an insurance claim, and nothing in the Court's analysis warrants allowing such a claim under the circumstances of this case.

Lastly, absent clearer allegations and argument to this effect, the Court here finds no relationship that would give rise to a legal duty without enforcing the contract in this case. Indeed, apart from Plaintiff's unsupported argument about Michigan's common law, he fails to allege or explain what, if any, relationship existed between the parties beyond the obvious contractual one. And the allegations of the complaint make clear that Defendant's duty to pay the insurance claim—and, therefore, to process the claim as necessary to effectuate payment—arose from Defendant's "contractual obligations."

For these reasons, Plaintiff's negligence claim is dismissed.

10

* * *

For the reasons given, the Court ORDERS that Plaintiff's motion to accept his late response (ECF No. 8) is GRANTED.

IT IS FURTHER ORDERED that Defendant's motion to dismiss (ECF No. 4) is GRANTED.

IT IS FURTHER ORDERED that Plaintiff's claims for negligence and bad faith are DISMISSED WITH PREJUDICE.

Dated: March 23, 2026                          s/Robert J. White_____
                                               Robert J. White
                                               United States District Judge

11